DONALDSON, Judge.
The Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, requires an employer to pay for an “other apparatus” that is reasonably necessary for treating an employee’s injury resulting from an accident arising out of and in the course of the employment. See § 25-6-77(a), Ala.Code 1975. This appeal raises the question whether, under the particular facts of this case, a walk-in bathtub qualifies as an “other apparatus” under the Act. We conclude that it does not; thus, we reverse the judgment of the Limestone Circuit Court (“the trial court”).

Facts and Procedural History

On July 3, 2009, Joe Tennison sustained a lumbar back injury while working for Flanagan Lumber Company, Inc. (“Flanagan Lumber”), the company by which he had been employed for approximately 30 years. On May 18, 2010, Tennison sued Flanagan Lumber in the trial court, seeking benefits under the Act. On March 22, 2011, the trial court entered an order approving a settlement agreement between the parties. Pursuant to the terms of the settlement agreement, Flanagan Lumber remained obligated to pay Tennison’s future medical expenses resulting from the accident to the extent required by the Act.
Dr. John Roberts, a pain-management physician, treated Tennison for pain management related to the injury. Dr. Roberts testified by deposition that Tennison was suffering from a work-related injury at the L4-5 level of his lumbar spine and that Tennison had already been placed at maximum medical improvement at the time Tennison had been referred to him. Dr. Roberts also testified that he treated Tennison for residual nerve pain in his left leg that was related to the work injury.
Testimony indicates that, following the settlement, Tennison continued to have issues with lower back pain and numbness in his left leg. Dr. Roberts testified that, during an appointment Tennison had with him on July 13, 2012, Tennison inquired about obtaining a prescription or a recommendation for a walk-in bathtub to be installed in Tennison’s home. Dr. Roberts noted in his medical record for the July 13 appointment that
“[Tennison is hjere to discuss walk-in tub. [Tennison] has not had an actual bathtub bath in three years as he’s unsteady and unable to step over side and in and out of [a] regular tub. [He b]e-lieves it would benefit to get in water and do general strengthening exercises rather than having to go to water therapy.”
On July 24, 2012, Dr. Roberts provided a written recommendation, addressed to “To Whom it May Concern,” stating that “Mr. Tennison has had a two level lumbar fusion but has persistent low back and left lower extremity pain. I believe he is significantly disabled and qualifies for a walk-in tub. I believe this is medically necessary.” On August 7, 2012, Dr. Roberts submitted a second letter, this one addressed to Flanagan Lumber’s workers’ compensation insurance carrier, stating: “I believe because of Mr. Tennison’s significant disability and deconditioned body that a walk-in bathtub is very reasonable in his situation. I believe this would avoid future falls getting in and out of a tub shower.”
In his deposition testimony, Dr. Roberts confirmed that his recommendation for the *804 walk-in bathtub is based, in part, on Tenni-son’s ability to access such a bathtub. Dr. Roberts testified:
“[Tennison’s counsel:] Do you think that [the walk-in bathtub] would be reasonable?
“[Dr. Roberts:] Yes.
“[Tennison’s counsel:] Do you think that that would be necessary?
“[Dr. Roberts:] I think [the walk-in bathtub] is certainly reasonable in his case. I believe that he has quite a bit of difficulty with walking and stability because of his prior treatment and injuries, and so I think it’s probably the lesser evil in this case. I think that he probably, like most people, could probably take a shower or tub bath otherwise, but I think that from what I’ve been able to see with him walking in and out of the clinic, I think he’s at significant risk of falling and injuring himself further. So I believe that — in my best estimate, it’s the least evil for providing appropriate care for Mr. Tennison.”
Dr. Roberts additionally stated that soaking in warm water in a walk-in bathtub could also provide Tennison with some temporary pain relief:
“I believe people who have better hygiene probably feel better. I feel that if he’s able to sit in warm to hot water he’ll probably get some symptom relief. I don’t believe it’ll help his deconditioning. I don’t believe it’ll help his nerve pain. But if that promotes him to be more active and do the stretches at home and do the prescribed therapy like was pointed out previously, then, yeah, think it would be helpful in his case.”
He also stated: “I believe [the walk-in bathtub] will be helpful to potentially give him some temporary symptom relief.” Dr. Roberts further testified that Tennison’s condition would not deteriorate if he was not provided the walk-in bathtub: “[I]f Mr. Tennison doesn’t get this tub, does that mean that he’s going to deteriorate clinically? Probably not. But the way I treat patients is to try to move forward and make things better. And so in that regard, I do think it’s necessary.” Further, he testified that the walk-in bathtub would not improve Tennison’s condition either:
“[Flanagan Lumber’s counsel:] Barring a fall in the shower — simply having a walk-in bathtub is not going to improve Mr. Tennison’s condition is it?
“[Dr. Roberts:] No, I don’t believe anything at this point is going to dramatically improve his condition after his work-related injury and his treatment thereafter. I think he’s at maximum medical improvement.”
Dr. Roberts also testified that he referred Tennison to water therapy at a rehabilitation facility in November 2012 so that Tennison could perform strengthening exercises. Dr. Roberts stated that having a pool of water would allow him to perform those exercises but that a walk-in bathtub would not be “big enough to be able to do those type of exercises because [of the patient’s] range of motion and walking. ...” The medical records in the record show that Tennison was discharged from pool therapy for nonattendance.
Tennison testified that he showers every day, although, he stated, before his work injury, he would occasionally bathe. He testified that, before making his request for a walk-in bathtub, he had attended water therapy pursuant to the directions of another treating physician, but, he said, the therapy increased his symptoms of pain; therefore, he stated, he stopped attending that therapy. He testified that, pursuant to Dr. Roberts’s directions in November 2012, he again attended sessions of water therapy on approximately *805 four occasions. He testified that, because he had not received any benefit from the water therapy and because it had not improved his condition, he, again, discontinued attending the therapy sessions.
Evidence presented to the trial court indicated that the cost of installing a walk-in bathtub in Tennison’s home would be $18,500. Flanagan Lumber produced evidence regarding a shower transfer bench that would serve as an alternative option for Tennison in facilitating access to the shower. Flanagan Lumber’s evidentiary documentation concerning that device, which was admitted into evidence without objection, indicated that it would cost $110.95.
On August 28, 2012, Flanagan Lumber filed a “Motion for Determination of Workers’ Compensation Medical Benefits Issue,” requesting that the trial court rule on whether Flanagan Lumber would be required to provide Tennison a walk-in bathtub pursuant to § 25-5-77(a). The trial court held a hearing on the motion on April 18, 2018. The trial court heard arguments of counsel for the parties and received into evidence the depositions of Tennison and Dr. Roberts, as well as other documentary exhibits. Counsel for the parties also provided the court with post-hearing briefs. On June 27, 2013, the trial court ruled that the “walk-in bathtub recommended by the authorized treating physician for [Tennison] is reasonably nee-essary medical apparatus that must be provided by [Flanagan Lumber] to [Tenni-son] pursuant to Section 25-5-77(a) of the Code of Alabama (1975).” Flanagan Lumber filed a timely notice of appeal to this court.[1]

Standard of Review

“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides:
‘“(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Additionally, a trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995). *806 ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
Denmark v. Industrial Mfg. Specialists, Inc., 98 So.3d 541, 543-44 (Ala.Civ.App.2012). “Further, because the trial court received no ore tenus evidence and its decision was based on the [depositions] of [Tennison and Tennison]’s treating physician[], no presumption of correctness attaches to the trial court’s judgment, and appellate review is de novo.” Ex parte Mitchell, 989 So.2d 1083, 1089-90 (Ala.2008) (citing Hacker v. Carlisle, 388 So.2d 947 (Ala.1980)).

Analysis

Flanagan Lumber first contends that the trial court’s judgment does not substantially comply with § 25-5-88, Ala. Code 1975.
“Section 25-5-88, Ala.Code 1975, provides that a final judgment in a workers’ compensation case ‘shall contain a statement of the law and facts and conclusions’ as determined by the trial court. The trial court “‘is required to make findings of fact and conclusions of law, and these findings should encompass each and every issue presented to and litigated in the trial court; where this is not done, the judgment should be reversed.’” Ex parte Valdez, 636 So.2d 401, 404 (Ala.1994), quoting Thompson & Co. Contractors v. Cole, 391 So.2d 1042, 1045 (Ala.Civ.App.1980). Substantial compliance with the statute is sufficient, and where the court’s findings are meager or omissive this court may look to the record to determine whether the trial court’s judgment can be sustained. Farris v. St. Vincent’s Hosp., 624 So.2d 183 (Ala.Civ.App.1993).”
Carr v. Added Dimensions No. 72 Brookwood, Inc., 772 So.2d 473, 475 (Ala.Civ.App.2000). After reviewing the trial court’s judgment, which adjudicates the single issue presented to the trial court in Flanagan Lumber’s motion, we conclude that the judgment complies with § 25-5-88 and, therefore, is sufficient for appellate review, and we will not reverse the trial court’s judgment on this basis.
Tennison contends that the walk-in bathtub constitutes an “other apparatus” under § 25-5-77(a) of the Act and that Flanagan Lumber must pay for the bathtub as part of its obligation to pay future medical expenses pursuant to the settlement. In pertinent part, § 25-5-77(a) provides that an employer shall pay for “reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment.”
Flanagan Lumber contends that, as a matter of law, a walk-in bathtub does not constitute an “other apparatus.” In the alternative, Flanagan Lumber contends that, even if the walk-in bathtub could be considered an “other apparatus,” the trial court lacked substantial evidence to conclude that, under the facts of this case, a walk-in bathtub was reasonably necessary for treating Tennison’s medical condition. Although the Act does not define “other apparatus,” our supreme court, in Ex parte Mitchell stated:
“[I]n order to constitute ‘other apparatus’ and be compensable as a medical benefit under § 25-5-77(a), the item must be: (a) reasonably necessary and (b) intended to improve the injured employee’s condition, to prevent the further *807 deterioration of the employee’s condition, or to relieve the employee from the effect of his condition by restoring the employee to a basic level of appearance or functioning. The determination of what constitutes a reasonably necessary ‘other apparatus’ should be made on a case-by-case basis.”
989 So.2d at 1092. As this court recently held in Alabama Forest Products Industry Workmen’s Compensation Self-Insurer’s Fund v. Harris, [Ms. 2121008, June 13, 2014] — So.3d -, - (Ala.Civ.App.2014), “our supreme court indicated in Mitchell that treatment and services fall within the scope of § 25-5-77 if they are designed to prevent the deterioration of an injured employee’s physical or mental condition or to aid the employee in achieving normal function lost due to his or her injury.”
In Ex parte Mitchell, our supreme court was presented with the question whether a motorized scooter and a lift to put the scooter on a vehicle qualified as “other apparatuses” under § 25-5-77(a). The trial court received testimonial evidence from the injured employee’s treating physicians stating that the scooter and the lift would not improve the employee’s medical condition but that those devices would assist his mobility and function. The supreme court concluded that the evidence established that the sole function of the lift was to “facilitate access to transportation in connection with a motor vehicle.” Ex parte Mitchell, 989 So.2d at 1092. The supreme court determined that the lift could not improve the injured employee’s condition, prevent the further deterioration of his condition, or relieve him from the effect of his condition by restoring him to a basic level of appearance or functioning. Applying the test that the court adopted in that opinion, the court held that the lift could not be considered an “other apparatus” under § 25-5-77(a). Regarding the scooter, however, the court determined that, although the evidence established that the scooter would not improve the injured employee’s medical condition, the scooter could be reasonably necessary to return the. injured employee “to a level of basic functioning pursuant to the new standard [set out in Ex parte Mitchell ] and could therefore be compensable under § 25-5-77(a).” Id. at 1092. Thus, the supreme court remanded the case for further proceedings for a determination as to whether the scooter could be considered an “other apparatus” pursuant, to the standard the court had set forth in that opinion. Id. at 1092-93.
In Harris, this court applied the Ex parte Mitchell test to conclude that Harris, the injured employee, was entitled to attendant-care services that would prevent the deterioration of the employee’s physical condition. This court stated that, “[i]n Mitchell, the supreme court essentially clarified that the benefits available under § 25-5-77 include not only recuperative devices, but also preventative and functional aids.” — So.3d at -. This court continued:
“The evidence indicates that, due to the severity of his injuries, Harris regularly requires assistance with the ordinary activities of daily living. Harris further needs help in performing his leg exercises, in taking his oral medication, in applying medicine onto his injured areas, and in preventing bedsores. Dr. Stephenson testified that attendant-care services will prevent the deterioration of Harris’s physical condition, that he considers attendant care reasonably necessary medical attention and physical rehabilitation, and that Harris would require skilled-nursing care if his family members did not act for his benefit. As set out above, Harris did not have to further prove that the attendant care *808 would actually improve his physical condition in order to secure the judgment.”
Id. at-.
In the present case, the trial court determined that the walk-in bathtub was a “reasonably necessary medical apparatus that must be provided by [Flanagan Lumber] to [Tennison] pursuant to Section 25-5-77(a).... ” Flanagan Lumber argues that, under our supreme court’s holding in Ex parte Mitchell, the walk-in bathtub cannot be considered an “other apparatus” as a matter of law because, like the lift in that case, the walk-in bathtub would merely serve to facilitate access for Tennison to bathe and shower. If Dr. Roberts had recommended the walk-in bathtub solely on the basis that it would provide Tennison with a means to facilitate access to bathing and showering, the walk-in bathtub would not meet the definition of an “other apparatus” because there would have been no showing that it would improve Tennison’s condition, prevent the further deterioration of his condition, or relieve him from the effect of his condition by restoring him to a basic level of appearance or functioning. The testimony in this case, however, indicated that Tennison suffers from back pain and residual leg pain that could be alleviated by rehabilitation through water therapy, which had been prescribed to Tennison. Our courts have previously recognized the utilization of specialized tubs, when reasonable and necessary, to treat injured employees under the Act. See Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala.2001). See also Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208, 1221 (Ala.1990). Also, the testimony reveals that Dr. Roberts recommended the walk-in bathtub as a mechanism to prevent Tennison from falling in the shower and further injuring his back.
Thus, we turn to whether substantial evidence supports the trial court’s conclusion, under the particular facts of this case, that the walk-in bathtub is reasonably necessary to improve Tennison’s condition, to prevent the further deterioration of his condition, or to relieve him from the effect of his condition by restoring him to a basic level of appearance or functioning.
The evidence clearly established that the walk-in bathtub would not improve Tenni-son’s condition. In his deposition, Dr. Roberts testified that he did not believe that anything, including the walk-in bathtub, would serve to improve Tennison’s condition. Dr. Roberts did testify that the walk-in bathtub would be “helpful” to provide Tennison “potential” and “temporary” pain relief; however, potential temporary alleviation of certain symptoms does not constitute an improvement of one’s condition.
Furthermore, when asked why he believed the walk-in bathtub was necessary, Dr. Roberts stated:
“I think it is certainly reasonable in his case. I believe that [Tennison] has quite a bit of difficulty with walking and stability because of his prior treatment and injuries, and so I think it’s probably the lesser evil in this case. I think that he probably,, like most people, could probably take a shower or tub bath otherwise, but I think that from what I’ve been able to see with him walking in and out of the clinic, I think he’s at significant risk of falling and injuring himself further. So I believe that — in my best estimate, it’s the least evil for providing appropriate care for Mr. Tennison.”
Based on our standard of review, this testimony could not have provided the trial court with substantial evidence to support a determination that the walk-in bathtub would improve Tennison’s condition.
Dr. Roberts also acknowledged that the walk-in bathtub would not prevent deterioration of Tennison’s condition, stating: *809 “[I]f Mr. Tennison doesn’t get this tub, does that mean that he’s going to deteriorate clinically? Probably not.” Dr. Roberts stated that the walk-in bathtub would help to prevent Tennison from falling in the shower, which could lead to further injury of his back. There is no evidence in the record to support a finding that there was a present risk to Tennison of falling in the shower. Additionally, Flanagan Lumber produced evidence to the trial court of a less expensive device, a shower transfer bench, which could help to prevent Tenni-son from falling in the shower and which would negate the need to install the $18,500 walk-in bathtub to prevent a hypothetical event.
Flanagan Lumber also asserts that the walk-in bathtub would not relieve Tennison from the effect of his condition by restoring him to a basic level of appearance or functioning. As we stated above concerning improvement of Tennison’s condition, we cannot conclude that the potential temporary symptom relief provided by a bathtub rises to the level of restoring Tennison to a basic level of appearance or functioning. Although Dr. Roberts testified that the bathtub might be helpful for hygienic purposes, there was no testimony that Tennison’s showers were inadequate for this purpose. Further, Dr. Roberts stated that the walk-in bathtub would only be “helpful” for this purpose, but there is no testimony that it would be necessary for this purpose.
The standard of review this court applies under § 25-5-81(e)(2) permits this court to reverse a trial court’s judgment “only if its factual finding is not supported by substantial evidence.” Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007). In this case, we conclude that, under the test pronounced in Ex parte Mitchell, the trial court’s judgment determining that the walk-in bathtub meets the definition of an “other apparatus” and requiring Flanagan Lumber to pay for the walk-in bathtub is not supported by substantial evidence. We do not conclude that a walk-in bathtub can never meet the definition of an “other apparatus”; we conclude only that the testimony does not establish that the walk-in bathtub was reasonably necessary under the facts of this case. See Ex parte Mitchell, 989 So.2d at 1092 (“The determination of what constitutes a reasonably necessary ‘other apparatus’ should be made on a case-by-case basis.”).

Conclusion

For the foregoing reasons, the judgment of the trial court is reversed, and we remand the cause to the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing, which THOMAS, J., joins.

. Flanagan Lumber has filed a motion in this court to strike portions of Tennison’s brief that refer to deposition testimony that was not submitted to the trial court concerning the current matter and that is not included in the record on appeal.
"As we have stated on many prior occasions, ‘[a]n appellate court is confined in its review to the appellate record, that record cannot be “changed, altered, or varied on appeal by statements in briefs of counsel,” and the court may not "assume error or presume the existence of facts as to which the record is silent.” ’ Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App.2006)).”
Dreading v. Dreading, 84 So.3d 935, 937 (Ala.Civ.App.2011). Accordingly, Flanagan Lumber's motion to strike is granted, and Tenni-son’s references in his brief on appeal to testimony that was not before the trial court have not been considered by this court in resolving this appeal.