THOMPSON, Presiding Judge.
Todd Entrekin, in his official capacity as sheriff of Etowah County (“the sheriff’), appeals from a judgment of the Etowah Circuit Court (“the trial court”) granting Jerry Frederic Lasseter’s motion to compel payment of medical expenses pursuant to a workers’ compensation settlement agreement (“the agreement”) entered into by the parties.
On January 16, 2012, Lasseter filed in the trial court a complaint[1] alleging that on July 20, 2010, he had been injured in a motor-vehicle accident (“the 2010 accident”) that occurred during the course of his employment as an Etowah County sheriffs deputy. The parties, stipulating that they were subject to the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala,Code 1975, entered into the agreement on November 12, 2013. The agreement stated that Lasseter alleged that the 2010 accident had “resulted in an injury to his spine, specifically at levels T-11 and T-8,” indicating an injury to his thoracic spine. The agreement also stated that the parties had agreed to a lump-sum settlement in the amount of $22,500 as full compensation for the alleged injury and that payment of the lump sum released the sheriff from all liability for past, present, and future compensation benefits regarding the alleged injury. However, the *481 agreement also provided that the sheriff would remain liable for Lasseter’s future medical expenses associated with the alleged injury. The trial court approved the agreement and adopted it as its judgment on November 12, 2013.
On July 3, 2014, Lasseter filed in the trial court a “motion to compel medical treatment.” Lasseter attached to that motion a letter from Meadowbrook Insurance Group (“MIG”), the third-party administrator of the Etowah County Commission’s workers’ compensation fund, which was responsible for meeting the sheriffs obligations as to medical expenses under the agreement, to Dr. Michelle Turnley, Las-seter’s treating physician. That letter informed Dr. Turnley that, in the future, MIG would cover treatment for Lasseter only at the T-8 and T-ll levels of his thoracic spine. According to Lasseter’s motion, Dr. Turnley had issued orders prescribing epidural injections to Lasseter’s lumbar spine, and MIG had sent Dr. Turn-ley the letter in response to those orders. It is undisputed that MIG had covered epidural injections to Lasseter’s lumbar spine before the parties entered into the agreement.
The sheriff filed in the trial court a response to Lasseter’s motion. Although the sheriff conceded that, pursuant to the agreement, he was liable for medical expenses associated with treatment to Las-seter’s thoracic spine at the T-8 and T-ll levels, he argued that he was not liable for medical expenses .associated with treatment to Lasseter’s. lumbar spine because there had been no determination of com-pensability for any injury to the lumbar spine and because the agreement explicitly limited coverage for future medical expenses to those associated with treatment of the thoracic spine.
On October 3, 2014, the trial court held a hearing on Lasseter’s motion to compel at which it . heard arguments of the parties’ attorneys but received no testimony or other evidence. Lasseter’s - attorney argued that, since the 2010 accident, Lasseter had received “multiple series” of epidural injections to his lumbar spine that MIG had covered but was no longer willing to cover after the parties entered into the agreement. Lasseter’s . attorney further argued that, because MIG had covered treatment to Lasseter’s lumbar spine before the parties entered into the agreement, Lasseter would not have entered into a settlement agreement that would prohibit his ability to recover medical expenses for that treatment. On the other hand, the sheriffs attorney argued that the plain language of the agreement explicitly limited coverage for . medical expenses to those expenses associated with treatment provided to the T-8 and T-ll levels of Lasseter’s thoracic spine. At the close of the hearing, the triál court asked the parties to brief the issues. On October 15, 2014, the trial court entered a judgment granting Lasseter’s motion to compel and ordering the sheriff to provide for the “treatment of epidural injections to [Las-seter’s] lumbar spine.” The sheriff timely appealed.
On appeal, the sheriff argues that the trial court erred because, he says, it expanded the scope of the agreement by requiring him to cover medical expenses for epidural injections to Lasseter’s lumbar spine. The sheriff argues, as he did in the trial court, that the agreement expressly limits his liability for Lasseter’s .future medical expenses to those expenses associated with the injury referenced in the agreement, i.e., expenses incurred for treatment of the thoracic spine at the T-8 and T-ll levels.
Because the trial court received no ore tenus evidence before entering its judgment, this court reviews that judg *482 ment without a presumption of correctness. Flanagan Lumber Co. v. Tennison, 160 So.3d 801, 806 (Ala.Civ.App.2014). See also § 25-5-81(e)(1), Ala.Code 1975 (“In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.”).
Alabama law concerning the effect of settlement agreements in workers’ compensation cases is well settled.
“In the absence of fraud, a workers’ compensation settlement supported by valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms.”
Matthew’s Masonry Co. v. Aldridge, 25 So.3d 464, 467 (Ala.Civ.App.2009).
The agreement states that the 2010 accident allegedly “resulted in an injury to [Lasseter’s] spine, specifically at levels T-11 and T-8.” The agreement goes on to state that the lump-sum settlement Las-seter received represented all compensation benefits “in any way connected with the above described accident, injury and/or disability” and that Lasseter “is entitled to future medical expenses with regard to this injury.” (Emphasis added.) The plain, unambiguous language of the agreement indicates that Lasseter and the sheriff entered into an agreement regarding an injury to Lasseter’s thoracic spine at the T-8 and T-ll levels, that the lump sum Lasseter received was a settlement of compensation benefits for that injury alone, and that Lasseter would be entitled to future medical expenses with regard to that injury. There is no mention in the agreement of any injury to Lasseter’s lumbar -spine. Thus,- the language in the agreement provides that Lasseter is entitled to future medical expenses associated with- treatment to the T-8 and T-ll levels of his thoracic spine. That language is unambiguous and cannot, on its face, be interpreted as providing Lasseter with coverage for future medical expenses associated with treatment of his lumbar spine.
Lasseter concedes that the unambiguous language of the agreement controls and that parol evidence is inadmissible to vary the terms of the agreement. -Nevertheless, he argues that an employee may recover future medical expenses for treatment of injuries not specifically excluded in a settlement agreement. Lasseter cites three cases in support of that proposition: Shop-A-Snak Food Mart, Inc. v. Penhale, 693 So.2d 479 (Ala.Civ.App.1997); Central LP Gas, Inc. v. Walls, 656 So.2d 890 (Ala.Civ.App.1995); and Waters v. Alabama Farmers Cooperative, Inc., 681 So.2d 622 (Ala.Civ.App.1996). We have reviewed those cases and have determined that they are distinguishable. "
In Shop-A-Snak, the employee in that case pleaded in her' complaint that her work-related accident had resulted in injuries to her right hand, thumb, wrist, and arm. At trial, the employee proved that, as a result of the work-related accident, she suffered'from carpal tunnel syndrome in her right upper extremity. The employer argued that its defense had been prejudiced because the employee had'not specifically pleaded carpal tunnel syndrome in her complaint. This court, referencing an opinion from our supreme court, held that an injured employee is not required to plead ‘a specific diagnosis to explain a work-related'-injury. Shop-A-Snak, 693 So.2d at 481. Lasseter relies on that holding to suppoft his argument that he should be entitled ’to recover medical expenses associated with treatment to his lumbar spine despite .the fact that no injury to. his lumbar spine is mentioned in the *483 agreement. However, the issue in Shop-A-Snak was the specificity required in an employee’s pleadings filed in a workers’ compensation case. In this case the issue is not with the language' of Lasseter’s pleadings but, rather, is with the language of a settlement agreement into which Las-seter voluntarily entered that explicitly limits coverage for his future medical expenses to a specific injury. Thus, because the issue in Shop-A-Snak was one of the language of pleadings, and the issue in this case is one of the language of a settlement agreement, Lasseter’s reliance on Shop-A-Snak is without merit.
Lasseter’s reliance on Central Gas also fails to support his. argument. In that case, the employee injured his foot, in a 1989 accident, and the parties entered into a settlement agreement under which the employer would pay all future medical expenses the employee incurred for treatment of the injured foot. The trial court in that case entered a judgment adopting the parties’ settlement agreement; that judgment stated, in part, -that the employer retained “ ‘liability [for] future reasonable medical expenses which [were] .proven to be directly related to the accident from which [the] claim [arose].”’ Central Gas, 656 So.2d at 894 (emphasis omitted). In 1994, the employee filed a motion seeking to recover expenses for surgery and treatment to his back. The employer denied liability on the ground that those expenses were not related to the 1989 injury. Because the trial court in that case found that the employee had presented sufficient evidence to support a finding that his back injury was “ ‘caused by and related to’ ” his foot injury, the trial court entered a judgment allowing the employee to recover medical expenses associated with treatment of his back injury. Central Gas, 656 So.2d at 892. This court affirmed that judgment on appeal. Id. at 894. Thus, because the employee in Central Gas was able to recover future medical expenses associated with treatment of his back, even though the settlement agreement and the initial judgment in that case referenced only an injury to the employee’s foot, Las-seter relies on Central Gas to support his argument that he should be entitled to recover future medical expenses for treatment of his lumbar spine.
However, unlike the judgment, in Central Gas, the judgment in this case does not entitle Lasseter to future medical expenses that are proyen to be directly related to the injury to Lasseter’s thoracic spine.. Rather, it provides that Lasseter is entitled to future medical expenses “resulting from the injury of July.20, 2010,” i.e., the’injury to Lasseter’s thoracic spine at the T-8 and T-ll levels. Furthermore, even if we were to construe the agreement as entitling Lasseter to future medical expenses for any treatment he .could show was related to the injury- referenced in the agreement, .Lasseter presented no evidence indicating that the epidural injections to his lumbar spine were necessitated by or related to the. injury to his thoracic spine. In fact, Dr. Turnley unequivocally stated in her deposition taken before the parties entered into the agreement that the fractures Lasseter suffered to the T-8 and T-ll levels were the only “new” injuries. Lasseter suffered as a result of the 2010 accident, and she further indicated that “the other things that were going on in [Lasseter’s].back”.appeared “more degenerative in nature” and .that she “couldn’t relate [them] directly to the injury” Lasseter suffered as a result of the 2010 accident.
The record includes an uncertified copy of a report comparing an MRI of Lasseter’s . lumbar spine performed one week after the 2010 accident with a prior MRI of his lumbar spine performed in *484 2005. That, report indicates that a “small subligamental herniation at [the] L5” level of Lasseter’s lumbar spine was “prominent” and was “more obvious” on the 2010 MRI than it was on the 2005 MRI. However, nothing in that report indicates that, the 2010 accident resulted in any injury to Lasseter’s lumbar .spine, and given Dr. Tumley’s statement that the “other things ... going on in [Lasseter’s] back ... looked moré' degenerative in nature” and that she “couldn’t relate [them] directly to the [July 20, 2010,] injury,” we cannot say that the report Lasseter submitted does anything more than provide speculation as to whether Lasseter’s complications with his lumbar spine were caused by or are related to the''injury he sufferéd in the 2010'accident." Evidence in a workers’ compensation case that provides nothing more than speculation or “ ‘mere possibilities’ ” will not “ ‘serve to “guess” the employer into liability.’ ” Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1122 (Ala.2003) (quoting Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989)).
Finally, Lasseter argues that Alabama Farmers Cooperative supports his contention that the agreement does''not prohibit him from recovering future medical expenses incurred as a result of treatment to his lumbar spine because that injury was not specifically excluded in the agreément. The employee in Alabama Farmers Cooperative suffered an injury in 1972, and in 1974 he entered into an agreement settling his claims for that injury but leaving open his right to - recover future medical expenses. In 1993, the employee sued the employer to recover medical expenses that he alleged were incurred as a result of an aggravation of the 1972 injury. The trial court in- that case entered a" summary judgment in favor of the employer. This court reversed the triaF court’s summary judgment because we held that there was a genuine issue of material fact as to whether the employee’s condition in 1993 was - an aggravation of the 1972 injury. Alabama Farmers Coop., 681 So.2d at 624. Thus, similar to the circumstances in Central Gas, we held that, if the employee in Alabama Farmers Cooperative was able to show-that his condition in 1993 was an aggravation of his 1972 injury, he would be entitled to recover medical expenses incurred in 1993 for treatment of his condition. 681 So.2d at 623. As we noted in our discussion of Central Gas, supra, Las-seter has presented no evidence indicating that the condition of his lumbar spine is related to the injury to his thoracic spine. Thus, Alabama Farmers Cooperative does not provide support for Lasseter’s argument.
Despite Lasseter’s argument that Shop-A-Snak, Central Gas, and Alabama Farmers Cooperative required the sheriff to .specifically exclude, in the agreement, Lasseter’s right to recover medical expenses for treatment of Lasseter’s lumbar spine to avoid liability for those expenses, our examination of those casés reveals no such holding. Furthermore, we note that it would be unreasonable and impractical to require an employer entering into a settlement agreement to specifically exclude responsibility for future medical expenses for each part of the body for which it does not agree to be held liable.
Because the agreement in this case specifically limits Lasseter’s right to recover future medical expenses to treatment provided to his thoracic spine, we hold that the trial court, erred in requiring the sheriff to cover medical expenses associated with treatment to Lasseter’s lumbar spine. Accordingly, we reverse the trial court’s judgment and remand the cause for the trial court to enter a judgment consistent with this "opinion.
*485 REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. Xasseter’s complaint originally named “Eto-wah County” as the defendant. The sheriff filed in the trial court a motion to dismiss “the Etowah County Commission” as the defendant and to substitute the sheriff, in his official capacity, as the proper defendant. In that motion, the sheriff admitted to being the proper defendant in the case. The trial court granted that motion.